If the Franklin county court did have before it all the necessary parties, and by reason thereof had the right to proceed to a determination of the questions raised by the petition of the plaintiff in that court, then such determination is binding upon us, and the demurrer to the answer of Frederick N. Sinks should be overruled, which is accordingly done.

---

## CONSIDERATION FOR MAINTENANCE OF A RAILWAY CROSSING.

Common Pleas Court of Hancock County.

JUDSON HARMON ET AL, RECEIVERS, v. TOLEDO, BOWLING GREEN & SOUTHERN TRACTION CO.*

Decided, April Term, 1917.

*Maintenance of Crossing—Of Traction Company Over Private Right-of-way of Steam Road—Contract so to do May be Enforced by Steam Railway Company—Right to Cross Distinguished from Manner of Crossing.*

In the absence of a statute, the right of a traction company to cross the private right-of-way of a steam railway company is a sufficient consideration to support a contract between the two for the construction and maintenance of the crossing by the former.

*Harlan F. Burket,* for plaintiff.
*E. V. Bope,* contra.

DUNCAN, J.

Heard on demurrer to third defense.

The plaintiffs, Harmon and Smith, are receivers of the Cincinnati, Hamilton & Dayton Railway Company, and operate a railroad running from Cincinnati to Toledo, with a branch line in Wood county, running from North Baltimore to Tontogony. The defendant, the Toledo, Bowling Green & Southern Traction Co.

---

*Affirmed by the Court of Appeals in the following memorandum: "Judgment affirmed on the reasoning of the opinion of Duncan, J., in deciding the demurrer, so far as concerns the question of liability under the contract in issue."

owns and operates an electric railway running from Findlay to Toledo and crosses said railroad at grade in the country about two miles north of North Baltimore.

The Cincinnati, Hamilton & Dayton Railroad was built first, and at the place in question, the company owned the land it occupied. The traction company on November 11, 1901, then extending its line northward from North Baltimore, and desiring to cross said railroad at said place, entered into a contract with said railroad company whereby the traction company was to put in the crossing over and across this private right-of-way and tracks of said railroad at its own expense, that said railroad company should thereafter maintain and renew the same whenever necessary and that the traction company should pay the expense thereof. Said crossing was accordingly constructed by the traction company and all bills for maintenance and renewals have been paid by it until the month of July, 1914, when it became necessary for the plaintiffs to put in a new crossing at said place at the expense of $227.38, which the traction company refuses to pay. Hence this lawsuit.

The traction company in its third defense claims that ever since the said crossing was first constructed it has been maintained for the mutual benefit and common interests of both companies and that under the statute it is liable only for one-half the expense of all necessary maintenance, repairs and renewals.

The question submitted on this demurrer is whether the traction company is liable for the whole cost under the contract, or for the one-half only under the claim of the statute. In other words, was there any consideration for the burden sought to be cast upon the traction company by said contract?

There are now several sections of the statute providing for the crossing of one railroad by another or by an electric line. The contract here in question was made in November, 1901, and the rights of the parties are to be determined in view of the statute law on the subject then in force. Many of the statutes referred to in argument find application to crossings within municipal corporations only. This crossing is not only outside of any municipal corporation, but is on a private right-of-way. And whether applying to conditions either within or without a municipal corporation, they only provide for the "manner of

crossing'' where both have or may acquire the ''right to cross,'' as on a public street, or on private property by contract or appropriation proceeding. The principle is recognized in *Hydell* v. *Toledo & Ohio Central Ry.*, 74 Ohio St., 138. The first paragraph of the syllabus of that case reads as follows:

''When one railway company desires to cross the tracks and right-of-way of another railway company at a common grade, it is competent for such companies to agree, as between themselves, upon the terms of crossing, including the compensation for the right to so cross, the payment of the expense of constructing and maintaining the crossing, the installing and maintaining of an interlocking system, as well as to which of the two companies shall employ, control and pay the necessary flagman or towerman to operate the interlocking system. Such a contract is not prohibited by Section 247e, Revised Statutes.''

If the ''manner of crossing'' were to be determined under the present statute, however, Section 8834, General Code, it would be observed that this section does not attempt to determine the ''right to cross,'' but whether the proposed crossing should be at grade, underenath or overhead. If the place of crossing is on a public street or other highway, the right of one company to use it is the same as that of the other, regardless of the priority of occupancy; in which case, of course, it may be true that there would be no consideration for the burden sought to be cast upon the junior company to put in the crossing and bear the whole cost of its maintenance; I mean under the present statute. 1 Elliott, Contracts, Section 215, lays down the principle in the following language:

''Neither the promise to do, nor the actual doing, of that which the promisor is, by law or subsisting contract, bound to do, is a sufficient consideration to support a promise made to the person upon whom the liability rests, either to induce him to perform what he is bound to do or to make a promise so to do. For this reason if one does, or promises to do merely that which the law requires of him, it is no consideration for a return promise.''

To the same effect is 1 Page on Contracts, Section 311; *Sherwin* v. *Brigham*, 39 Ohio St., 137; *Withers* v. *Ewing*, 40 Ohio St.,

400; *Snyder* v. *Schardt,* 9 C.C.(N.S.), 615; *Arend* v. *Smith,* 151 N. Y., 502; *Warren* v. *Hodge,* 121 Mass., 106; *Shortle* v. *Terre Haute,* 131 Ind., 338, and other cases.

But the right to cross the lands or right-of-way of another involves private property, and it can make no difference that the same belongs to a railroad company or is occupied by a railroad; and while it is subject to appropriation for railroad or other public purposes not destroying its present public use, the owner is entitled to compensation for the land so taken. This right is guaranteed to every person by Article 1, Section 19, of the Constitution of Ohio, which provides that where private property shall be taken for public use, compensation therefor shall first be made in money, or first secured by deposit of money, and its value assessed by a jury; and the principle has found application in *Lake Shore & M. S. Ry.* v. *Cincinnati, S. & C. Ry.,* 30 Ohio St., 604. Paragraph 7 of the syllabus reads as follows:

"The right of a railroad corporation to hold land is not an unqualified right, but it is limited to the uses and purposes of the corporation, and is to be held for the purposes of the grant for public uses. The title which it has in its right-of-way, is a qualified title, subject to the equal right of another railroad corporation to cross the same with its track, provided compensation be made as required in the case of individuals for the property appropriated, or the interest therein which is so appropriated."

Paragraph 10 reads as follows:

"In a proceeding under the statute to appropriate a right-of-way across the track of an existing railroad, to be used in common, as a railroad crossing, the owner of such track is entitled to compensation for the property or interest therein, actually appropriated, and for such consequential damages, not provided for by the act of 1860, as are the direct and proximate consequence of such appropriation."

Accordingly, when the Legislature provided the procedure by which the "manner of crossing" might be determined, as set forth in Section 8834, General Code, and the right to have the

costs of the original construction and maintenance of the crossing apportioned among the parties interested, as set forth in Section 8836, General Code, it also provided a method in the same act, now Section 8838, General Code, whereby the compensation to be paid the owner for the land occupied by the crossing might be determined. Said Section 8838, General Code, reads as follows:

"Unless such companies agree upon the compensation to be paid for the land occupied by such crossing, the court shall submit that question to a jury as provided in other cases for the appropriation of private property."

The *right* to cross is separate and distinct from the "manner of crossing," and if upon private property, the owner is entitled to compensation therefor. In the one case, the jury fixes the terms; in the otther, the court. In addition to this right of compensation, there was no statute empowering the court to determine the "manner of crossing" when this contract was entered into, or of apportioning the cost of its construction and maintenance, as now under Section 8836, General Code. As far as the construction and maintenance of the crossing is concerned, the traction company was then wholly at the mercy of the railroad company. If this is so and they entered into an arrangement whereby the traction company acquired any right which it did not otherwise have, in consideration of a burden which it then assumed, it can not be said now that the contract here sued on was without consideration. In this behalf the second paragraph of the syllabus in *Judy* v. *Louderman,* 48 Ohio St., 562, is in point:

"While it is necessary that the consideration of a promise should be of some value, it is sufficient if it be such as could be valuable to the party promising; and the law will not enter into an inquiry as to the adequacy of the consideration, but will leave the parties to be the sole judges of the benefits to be derived from their contracts, unless the inadequacy of consideration is so gross as of itself to prove fraud or imposition."

Holding these views, the demurrer will be sustained.